All right, be seated. And at this point, I'm going to relinquish my chair to Judge Wilkinson who's presiding and is appearing in all his glory on television. Judge Wilkinson, we just finished up the first portion of this, the first issue, and we're now left with the second two issues. Judge Wilkinson All right, I'm glad to see everyone. I'm sorry that COVID restrictions prohibited me from listening to the first portion of the argument, but I was able to and have reviewed all the briefs in great detail. And I look forward to hearing from you in this second portion. And Mr. Kamens, whenever you're ready, please, please get started. Judge Kamens Thank you, Judge Wilkinson. If I can again, remove my mask. May it please the court. 18 U.S.C. 794 requires the government to prove that a defendant act with the intent or reason to believe that information transmitted is to be used to the injury of the United States or the advantage of a foreign country. This is not an objective inquiry. Under Gorin, the Supreme Court's decision on this mens rea element, the court ruled that this means that the defendant must have bad faith. The defendant must intend or know that transmitted information will harm the United In this case, Judge Kamens Did you did you object to the instruction? Judge Wilkinson We did we objected at the unclassified JA 1349 through 52. We started with the words we object. And the basis for the objection was that the district court stripped away the subjective mens rea requirement that the government proved that the defendant subjectively intended or knew that the transmitted information Judge Kamens I'm sorry, what did the court say there that you thought was improper? Judge Wilkinson The court said that the government could prove mens rea if the defendant acted willfully, that is that they acted with an intent to violate any law, and also that a reasonable person would know or believe that the information could harm the United States or benefit a foreign country. Judge Kamens Let me ask you this. When you have a reason to believe provision in a reasonably to believe, wouldn't that suggest, of course, the possibility or the need for subjective belief that was tested against the reasonable person? In other words, you have to have the subjective belief, but it has to be tested as to against what a reasonable person in that same position would have concluded. And I didn't think the court eliminated that notion. But that's why I was asking you what the court said that you thought was, was offensive to your position. Judge Wilkinson What we objected to was that there was no subjective component to the reason to believe instruction. So as long as the jury determined that a reasonable person... constitutional error, this is a non-constitutional error. I think instructional errors most often are. And so you'd have to show that there was some sort of prejudice that occurred here. And given the very significant weight of the adverse evidence, that would seem to argue against any kind of prejudice. And as I understand it, the district court also expressly instructed the jury that negligence was not sufficient for conviction. That's true. And let me respond to your first the first part of your question. First, yes, we agreed we have to show prejudice. But the with respect to the evidence in the case, it was hotly contested as to the information that was transmitted. And the evidence in the trial based upon the cell phone that was provided by Mr. Mallory to the FBI, there were only two documents that were transmitted to the Chinese that contained information that got the government classified. And that is the information that we argued was innocuous because it was already in the public record and well represented by government issued documents. And so you had a chance to argue that, though, didn't you? It was already a matter of public record. Well, the information that was your that was your closing argument? Yes, absolutely. But the question is, is there prejudice when the mens rea is incorrectly instructed so that the government doesn't use me? What I'm suggesting to you is that the combination of the evidence, of course, we can, you know, we can debate that. But I'm kind of reluctant to get into the specifics because I don't want to get into classified materials. But what I'm suggesting to you is that the fact that the district judge explicitly says, you know, you can't convict on negligence. That's one thing. And then the other thing that I find instructive is that, you know, your main point in this was that this was open source information. This was all that all of this was a matter of public record. And so I'm suggesting to you, Ms. Blair, that you've got a chance extensively to cross examine and argue on your main point about it being open source information that the district court is telling the jury you can't convict this defendant on the basis of negligence. What I'm asking you is how can we address the prejudice here in light of it's not just one factor that cuts against prejudice. In my judgment, it's it's it could be as many as three. Your Honor, as we said in the reply brief, Justice, the Supreme Court said in Alanis, simply saying that you can't convict on negligence is doesn't mean that the jury's not only listen to instructions, but listen to what the district what the district court says in the district court said that the jury could convict if they found a reasonable person would have concluded that the information could harm the United States or aid a foreign country. That is a reasonable person. Objective standard required by the text of the statute and Gorin and your question about whether there was prejudice. Yes, we could argue to the jury that this information was already in the public, but the jury, the standard by which the jury measured guilt in this case was a negligent standard as to the cause or knowledge or intent to believe that the information could harm the classified documents, which we concede, then they could convict in this case. But the statute itself requires proof of subjective intent, intent or knowledge that the information will harm the United States. And that's not what this instruction required the jury to find. I'd also like to briefly say that the district court did not apply the buyer seller instruction that we had requested. The court should consider that de novo. The information in the light most favorable to the defense established one transaction, one transmission. And if I can, that's the buyer seller business has been generally confined to the drugs and narcotics. But I haven't seen the buyer seller concept applied to an espionage case. I haven't either, but it has been applied outside of the drug context. There's a case United States versus Guy that we cited from the Seventh Circuit involving involving the sale of cable box, the scramblers and the underlying principle of the rule applies. But you know, it's so foreign to the context here, where the allegations are that information was being transmitted to a particular person for use by the foreign countries intelligence. And clearly, this agreement was to send intelligence beyond this particular person. They too entered into an agreement if they entered into an agreement to do something that would facilitate or assist a third person or that would adversely affect the United States, both of which would be within the scope of conspiracies. The question is not whether that's not a crime. We agree it's a crime. No, the question is whether it takes a buyer seller beyond a buyer seller transaction to something beyond that. And we have cases that have analyzed when the buyer seller transaction goes beyond when it furthers the enterprise, it furthers the effort that's being agreed to. And it's not just for the two parties. That's fair. But in this case, there was simply one transmission. And so based on these facts, that doesn't tell you a thing. The question is, what was the purpose of the transmission? Well, if the purpose of the transmission is to make one transmission, and there's no agreement beyond that one's transmission, then the buyer seller allegation was the transmission was to aid another country or to hurt this country. And that was the that's the and that takes it beyond the buyer seller. I mean, it's that to me, you're way out on a limb on that one. Well, I don't want to belabor the point that brings it squarely into the substance substantive offense of transmission, which is prohibited by 794. A and isn't a conspiracy. But unless excuse me, you have some rebuttal time that you've reserved. And if my colleagues have questions, we'll let them in. They should ask them. Otherwise, I'll ask your opposing counsel.  Oh, good morning, and may it please the court, Jennifer Kennedy jelly on behalf of the United States. As an international matter, I'm just going to respond to one thing my colleague raised. And that is a conspiracy here involved eight classified national defense documents, not just two documents. Two documents were transmitted to the PRC intelligence service. But there were six other documents, including one that the Central Intelligence Agency witnessed testified to being one of the most damaging of the ones defendant attempted to transmit except the meaningful thing is that they were not transmitted for that particular person's own interest and satisfaction that was transmitted for that person to use it beyond his own purposes to assist the foreign government or to hurt the United States. And that is an agreement that constitutes part of a conspiracy with that purpose as opposed to simple buy sell transaction. Correct, Your Honor. And one of those documents, the defendant hit send on four times and just was unsuccessful in transmitting. As to the instruction at issue here, Your Honors, as a preliminary matter, defendant didn't object to the reasonable person instruction below. So this court reviews that instruction for plain error. And in fact, not only did defendant not object, defendant indicated he had no substantive objection to the reasonable person instruction. And that instruction was not a purely objective instruction, because what it was asking was that the court instruct the jury that the reason to believe wrong could be proven if the government showed what a reasonable person in the defendant's position would have understood the potential damage to be. And so what that instruction really did was instructed the jury on how to use the voluminous evidence into the in the record as to defendant's training and experience in the intelligence. What you're saying is that the instruction drew it not just to a general hypothetical object, reasonable individual, but it honed in on this particular individual's conduct. Correct, Your Honor. And even as to the willfulness instruction that defendant now challenges, one of the sentences in that willfulness instruction read, an act is done willfully if it is done voluntarily and intentionally with the specific intent to do something that the law forbids, that is to say, with a bad purpose, either to disobey or to disregard the law with respect to the offenses that are charged in the indictment. So it wasn't as to any law. It was as to the charges in the indictment. And there was voluminous testimony in the record. The defendant signed multiple nondisclosure agreements during his time in the intelligence community that noted the harm of transmissions of this type of information to unauthorized recipients and also noted that the defendant could be charged with 18 U.S.C. 793 or 794 were the defendant to pass these documents. Furthermore, in this specific case on these specific facts, the government actually offered subjective intent evidence using the defendant's own words to the PRC intelligence officer. At UJA 1889, there's a message on the covert communications platform where defendant is pitching the value of these documents to the PRC intelligence service, writing the FCA info, and that was to obscure which foreign country. I want to make sure that my impression is correct that I thought that the district judge had gone to some length to warn the jury of convicting on any theory of negligence. Is that correct? That is correct, Your Honor. And in fact, that reasonable person instruction followed a sentence in which the court said, it does not mean that the defendant acted negligently. And the reasonable person instruction was then followed by six sentences on willfulness, the word willful not actually appearing in the 794 statutory language. And again, that willfulness instruction tied it to the offenses charged in the indictment. So basically, we're told by Henderson v. Kibbe and other cases that we have to take instructions as a whole and that we're not supposed to sort of, you know, parse them forever and flashback them. And what you're saying is that when you look at this instruction as a whole, it not only says you can't doesn't mean you can't convict on negligence, you can't convict on negligence. But the district judge was pounding the willfulness mens re in the instruction. Absolutely, Your Honor. So the instruction appropriately reflected the plain language of the statute, that or in the statute, that there's both a subjective and an objective, although not purely objective, component to 794's intent standards. So that the government can show either that the defendant objectively intended to harm the United States or benefit China, or that the defendant, knowing what the defendant knew, based on the evidence in the record, had reason to believe that the unauthorized transmission would benefit China or harm the national security of the United States. The instruction here... The interesting thing is that the phrase reason to believe means the defendant, not just any person or an objectively reasonable person somewhere in it, but the defendant had reason to believe. Yes, Your Honor. And the instruction said, in determining whether a defendant has reason to believe, the question is whether a reasonable person in defendant's position would have reached the same conclusion. So all that instruction really did for the jury was explain to them they can factor in the training defendant had received, the non-disclosure agreements that he had signed, what he would have been trained that the executive order on classification would tell him about the potential harm of passing secret and top secret documents for a foreign intelligence service would be. And once again, in this case, the government actually offered evidence of subjective intent to benefit the Chinese, because the defendant wrote to his handler in the PRC, the foreign country information lets you see their capabilities. They deal with your country per your government's agreement, but they also do stuff in China without your knowledge. You need to understand all countries that impact you, not just the United States. He writes again to the intelligence officer in China at UJA 1897. Again, at UJA 1896, defendant says, as your object is to gain information and my object is to be paid for. And the covert communications between the defendant and his handler also show defendant subjectively understood the harm to the United States from passing this information. At UJA 1885, defendant wrote, the black was to cross out the security classifications, top secret. And in the record was that the defendant understood that top secret information can potentially cause exceptionally grave damage to the national security of the United States. At 1887, in the unclassified joint appendix, defendant wrote, it was dicey, look it up, when they asked for me by name, referencing his border stop in Chicago, if they were looking for me in terms of state secrets and found the SD card, we would not be talking today. I am taking the real risk, as you, Mr. Ding, and higher up bosses know. So in the record was the fact that defendant subjectively was trying to benefit the Chinese so that he would be paid. The best way to receive money was to give them valuable intelligence. And also that the defendant very well understood the damage to the national security that could result from passing these documents to the Chinese intelligence service. And as to the buyer seller instruction, it is so inapplicable to this context, the government will rest on the papers unless the panel has any questions as to that issue. All right, if the panel has no questions, I think what we'll do is allow Mr. Kamen's, his rebuttal panel. Thank you, your honors. Just a few points. First, we did object to the instruction given by the court. What the government has just referred to is discussion about a prior instruction on mens rea that the court didn't give. That instruction required proof that the defendant acted with a purpose to harm the United States or aid a foreign country. And the court stripped out that language in the instruction that it gave. So, of course, we didn't object to the prior instruction because it had the subjective component that is required by Gorin. Gorin says the obvious delimiting words in the statute are those requiring intent or reason to believe that the information to be obtained is to be used to the injury of the United States or the advantage of any foreign nation. This requires those prosecuted to have acted in bad faith. That is a subjective test. Didn't the court address the jury and tell them that the defendant had to have a reason to believe? I mean, that was its first sentence, that the defendant had to have reason to believe. The court said that the defendant had to act willfully in transmitting information later. It started out by saying the defendant had to know or have reason to believe. And then it defined reason to believe as an objective standard. And as we quoted in the opening brief. Oh, that goes to what had the reason to believe of. In other words, the court said the defendant has reason to believe, as I've used that phrase, a defendant has reason to believe that the defendant knows facts from which he concluded or reasonably should have concluded that the information related to the national defense. And it's the reasonably should have concluded. But it's still he's addressing what the defendant should have. Now, to measure whether that subjective belief is off the charts or within the confines of the statute, you decide whether some other person in that position would have believed. And that's what it's the whole first sentence is subjective component. If I can long sentence, if I can read from Alana's criminal negligence standards, often incorporate the circumstances known to a defendant. Courts then ask, however, whether a reasonable person equipped with that knowledge, not the actual defendant would recognize the harmfulness of his conduct. And that was the standard in this case that the court then said that it's not on the standard. It did, but the actual language of the test was negligence. It can say form over substance that it wants to. But the standard given to the jury was a negligence standard, even though it said you can't convict on negligence. What the standard of mens rea was was a negligence standard. And we're suggesting that the evidence would support the notion that without this instruction, the jury could have concluded that this was merely an accident, that Mr. Mallory delivered this stuff and not in the purpose of aiding China or hurting the United States. It seems to me not an accident. Your Honor, the information, negligence, negligence. That's what you're suggesting. I'm suggesting the legal standard provided by the court was a negligence standard plus willfulness. Willfulness not being in the statute, by the way. But even if we were to give you the benefit of the doubt on whether you objected or not, objected or not, I'm not sure that where we're dealing with a non-constitutional error, that this the plain error test in the third prong of all I know, and the normal test we are dealing with here. I'm not sure it makes any difference because in either case, you have to prove that the substantial rights of the defendant were somehow infringed. And, you know, it kind of boggles the mind, really, when you look at this record as a whole. To think that this was some sort of mistake or accident or carelessness, it just, the record does not lead to that conclusion. And we've already been over it. But you had a chance to argue that it was a matter of public record. And the district court, it seemed to me, when you take the instruction as a whole, which all the Supreme Court cases tell us to do, not to draw one little thread or one little sentence from it, but to take it as a whole. It seems to me that the district court was saying, that the jury was saying, in light of the district court's instruction, that the defendant knew darn well what he was doing. And did it for personal profit and knew what the consequences were. And this is not, it just doesn't seem to me to be anything like your normal negligence case. If you want to conclude very briefly, I always like to give the litigant the last word. Thank you, Your Honor. But please be brief, okay? Thank you, Your Honor. The argument is not that Mr. Mallory acted negligently. The argument was that because the information he provided was worthless, according to the Chinese agent, it was worthless. And Mr. Mallory knew it was already in the public record, and he had no intent to harm the United States or aid a foreign country. And that's what we were precluded by the standard from presenting to the jury, because they didn't have the right mens rea standard. Thank you. All right. We thank you. We will briefly recess and begin to hear our next two cases.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.